Exhibit 1

# ADVISORY AGREEMENT

This Advisory Agreement (the "Agreement") made this 10th day of August, 2011, by and between **Damon's International, Inc., et al.** ("Client"), with its principal place of business at _____ and NHB Advisors, Inc. with offices at 822 Montgomery Avenue, Suite 204, Narberth, PA 19072 ("Advisor").

**WHEREAS**, Client is a restaurant franchisor seeking to sell some or all of its assets, including franchise servicing rights; and

**WHEREAS**, Client is a debtor-in-possession in a case filed in the United States Bankruptcy Court for the Western District of Pennsylvania, Case No. 09-27920 (JAD); and

**WHEREAS**, Client desires to retain the services of Advisor as set forth herein in accordance with the terms and conditions of this Agreement; and

**WHEREAS**, Advisor desires to provide the services to Client as set forth herein, in accordance with the terms and conditions of this Agreement;

NOW THEREFORE, in consideration of the mutual promises set forth herein, and intending to be legally bound, Client and Advisor hereby agree as follows:

I. **ADVISORY SERVICES TO BE RENDERED ON A REASONABLE EFFORTS BASIS**

   A. Scope of Work

   Advisor shall seek purchaser(s) for all or part of Client's Assets (the "Transaction(s)"), and shall be the Client's exclusive Advisor for sales of all tangible and intangible assets.

   B. Relative to the Transaction(s), Advisor shall act as intermediary ("Intermediary") to assist Client in conducting the sale of all of the Client's Assets. The Advisor's activities may include but are not limited to; preparing appropriate advertising, canvassing prospective purchasers, obtaining execution of nondisclosure agreements in cooperation with Client's legal counsel, assist in all aspects of the due diligence process, soliciting proposals from prospective purchasers, negotiating terms and documentation in cooperation with Client's legal counsel, making recommendations to Client concerning the purchase proposal(s) submitted and conducting any auction as may be required by the sales process. In addition to all other amounts due Advisor, Advisor shall be paid the Success Fee(s) specified hereunder in respect of sales of all or part of Client's business.

   C. Unless otherwise specified in writing by Advisor, Advisor does not promise any particular results or outcomes in connection with services provided hereunder.

II. **REGULATORY COMPLIANCE**

   All regulatory compliance decisions concerning Client's business are the responsibility of Client and, without limitation, Advisor shall have no duty, no responsibility, and no au-

1

thority with respect to regulatory compliance duties, including, without limitation: (1) the management, handling, transport, disposal or remediation of hazardous wastes or hazardous substances; (2) compliance with applicable federal, state or local statutes, ordinances, regulations, orders and requirements of common law in any way affecting or pertaining to health, safety or the environment; and (3) filings with federal and state securities authorities and federal, state and local taxing authorities.

## III. TERM OF AGREEMENT

A. This Agreement will be for a term, commencing upon the signature of this document retaining the Advisor as the Intermediary and terminating 180 days thereafter ("Ending Date"). In the event written notice of termination of this Agreement is not provided by either party to the other within 15 days of any Ending Date, the Ending Date shall be deemed extended by one month.

B. Notwithstanding the foregoing Section III(A), this Agreement shall terminate upon seven (7) days written notice by either party to the other as provided herein.

D. Any transaction completed for a period of 24 months with prospective purchaser, introduced to the client by the advisor during this retention period, constitutes satisfactory performance by the Advisor and entitles the Advisor to fees and Expenses described in section IV.

E. Sections IV, VI and VII shall survive termination hereof.

## IV. FEES AND EXPENSES TO ADVISOR

A. Expenses

The Company agrees to pay all expenses. The Advisor will prepare an expense budget to be approved by client. Expenses are due in advance upon approval of budget to conduct the sale of assets provided that an initial sale of any lease or executor contract rights has occurred. Any expenses incurred prior to the sale of any lease or executor contract rights will be paid after the proceeds of the initial sale have been received. Additional out of pocket expenses (phone, fax, local transportation) accrued by the Advisor will be billed monthly. No amounts shall be payable without an order of the bankruptcy court allowing such payments.

B. Taxes and Accounting
The Client shall be responsible for reporting and remitting all sales and similar taxes with respect to the sale of the Assets.

C. Transaction Fees

1. In the event of the Sale of any lease or executor contract rights to which Client is a party, including agreements, Advisor shall be paid a Transaction Fee(s) of $25,000.00, plus Three Percent (3%) of the gross proceeds received from the sale of the leases.

2

2. Sale of Remaining Assets - Advisor shall be paid (a) Transaction Fee(s) based on the gross proceeds received from the sale of non-lease assets which shall be calculated as (a) $250,000 (less the $25,000 fee reflected in Section IV.C.1, above, if earned from the first $4,000,000.00 in sale proceeds, plus (b) Three percent (3%) of all gross proceeds in excess of $4,000,000.00.

3. As compensation for the significant efforts Advisor will expend for the benefit of Client's estate, in the event Client elects no to sell any assets in such manner that gives rise to compensation under Section IV.C. 1 & 2, above, upon the event of confirmation of a Plan of Reorganization, Advisor will be entitled to a $150,000 reorganization fee.

4. In the event the Advisor is requested to seek financing for Client, Advisor shall be paid 3% of the amount obtained, either in the form of debt or equity.

Transaction Fee(s) shall be paid in certified funds and are due from the proceeds at the time of closing of each transaction, to be held in escrow pending court approval. Fees and compensation of advisor will be subject to review under Section 328 of the bankruptcy code, with only the Court and the United States Trustee having the right of review under Section 330 of the bankruptcy code.

## V. STATUS OF ADVISOR

Advisor and all personnel of Advisor shall perform all services hereunder as independent contractors and not as employees of Client, and neither Advisor nor its personnel shall receive any remuneration from Client, including participation in disability, retirement, pension, profit sharing or other benefit or deferred compensation plans of Client, other than as set forth herein. The name of Advisor its personnel shall not be set forth in any document of Client, or otherwise used by Client, unless Advisor shall have previously consented thereto in writing.

## VI INFORMATION AND CONFIDENTIALITY

A. Information
Client agrees to provide Advisor access to all financial and other information and records and to Client's directors, officers, employees, representatives, creditors and other stakeholders as Advisor reasonably deems appropriate.

B. Confidentiality
All information concerning Client's business, whether or not in writing, of a private, secret or confidential nature concerning Client, is and shall remain the exclusive property of Client, and no such information shall be divulged by Advisor to third parties, other than in the reasonable course of the performance of services to be rendered hereunder, unless information becomes public knowledge or is required by law or order of a court.

3

C. Representations
Client is unaware of any material misrepresentation or misstatement with respect to information provided or to be provided to Advisor, and will immediately notify Advisor in writing if at any time Client discovers that there has been such material misrepresentation.

## VII. INDEMNIFICATION AND HOLD HARMLESS

A. A. Indemnification and Hold Harmless
Client agrees to indemnify and hold harmless Advisor, to the full extent lawful, against any and all losses, actions, claims, damages, liabilities or costs including reasonable legal fees and expenses (collectively, "Loss"), whether or not in connection with a matter in which Advisor is a party, as and when incurred, directly or indirectly, caused by, relating to, based upon or arising out of Advisor acting for Client pursuant to the Agreement. Advisor shall not be held liable for errors in judgment. Notwithstanding the foregoing, Client shall have no duty to indemnify or to hold harmless Advisor for any loss, action, claim, damage, liability or cost to the extent such Loss is found, in a final judgment by a court of competent jurisdiction to have resulted primarily and directly from the willful misconduct or unlawful activities of Advisor.

B. Limitation of Liability
Client and its subsidiaries agree that Advisor's liability to Client, to the extent not otherwise limited, indemnified or held harmless hereunder, is further limited to the amount of fees paid to Advisor hereunder.

C. Included Indemnities
These indemnification and hold harmless provisions shall be in addition to any liability which Client may otherwise have to Advisor, and shall include in addition to Advisor, Advisor's affiliated entities, directors, officers, employees, agents and controlling persons of Advisor within the meaning of the federal securities laws. All references to Advisor in these indemnification and hold harmless provisions shall be understood to include any of the foregoing.

D. Counsel and Notification of Client
If any claim, action, proceeding, or investigation is commenced as to which Advisor proposes to demand such indemnification and to be held harmless, it will notify Client promptly upon becoming aware of any such action, proceeding or investigation. Advisor will have the right to retain counsel of its own choice to represent it, and Client will pay the reasonable fees and expenses of such counsel; and such counsel shall to its fullest extent consistent with its professional responsibilities cooperate with Client and any counsel designated by it. Client will only be liable for any settlement of any claim against Advisor made with Client's written consent, which consent shall not be unreasonably withheld.

E. In the event of litigation between Client and Advisor, the prevailing party shall be entitled to recover its reasonable fees and expenses, including attorney's fees.

## VIII  MISCELLANEOUS PROVISIONS

A. Entire Agreement
This Agreement constitutes the entire understanding and Agreement between the parties hereto with respect to the subject matter hereof and may not be amended, changed, modified, or supplemented, except in writing signed by each party, for which purposes an exchange of electronic mail or faxes clearly indicating mutual agreement shall be acceptable.

B. Assignment
Neither party shall sell, assign, convey or otherwise transfer this Agreement, or any of the rights, interests or obligations hereunder to any other party without the prior written consent of the other party, except that Advisor may assign this Agreement to a corporation in which Thomas D. Hays, III or Edward T. Gavin, CTP is a shareholder.

C. Notices
Any written notice required to be given hereunder shall be validly given if delivered personally or sent by registered or certified mail, postage prepaid, to the address of the party set forth in the opening paragraph of this Agreement, or to such other address as one party shall provide in writing to the other in accordance with this paragraph.

D. Interpretation and Choice of Forum
The validity, interpretation, and enforcement of this Agreement shall be governed by the internal laws of the Commonwealth of Pennsylvania applicable to Agreements made and to be fully performed therein. The parties agree that any controversy arising hereunder shall be brought in the Court of Common Pleas for Montgomery County, Pennsylvania, which the parties agree is an appropriate and convenient forum.

E. Waiver
The waiver of any breach of any provision of this Agreement by a party to this Agreement shall not operate or be construed as a waiver of any subsequent breach by such party.

F. Separability of Provisions
If any provision of this Agreement shall be or become illegal or unenforceable in whole or in part for any reason whatsoever, the remaining provisions shall nevertheless be deemed, valid, binding and subsisting.

G. Headings and Paragraphs
The headings and paragraphs of this Agreement are for convenience only and shall not affect the interpretation of this Agreement.

G. Bankruptcy
Client will make best efforts to seek an order of the bankruptcy court assuming this contract without change. In addition, such order, by attaching this Agreement thereto, shall seek to ensure that all payments to Advisor are final and unappealable by Client as Debtor, by the Official Committee of Unsecured Creditors, the U.S. Trustee and Chapter 11 Trustee, if any.

H. Employment

If during the term of this Agreement or any further extensions or modifications of this Agreement, or for a period of one year thereafter, Client offers, or any of Advisor's personnel accepts, any employment position or contract with Client, Advisor shall be deemed to have earned a reasonable commission in connection therewith, which shall be calculated at a rate of 30% of the annualized compensation in the event of employment or of the annualized contract amount in the event of a contract, which shall be payable immediately upon presentation of Advisor's invoice therefore.

## IX DISCLOSURE

A. Advisor hereby discloses that Advisor has many relationships in the business community involving lenders, law firms, accounting firms, consulting firms, independent consultant contractors, and others. These relationships may include Advisor in the past or currently: receiving client referrals, providing client referrals, providing or receiving professional services, employing employees or contractors or serving as a contractor, and other types of relationships. These relationships may include lenders, professionals or others that have a connection with Client and/or Advisor's services provided under this Agreement. Such relationships are expected to continue and new ones may begin during the provision of services hereunder. Advisor represents that its independence in providing services hereunder is not compromised by such relationships, and is willing to confer with Client at Client's request concerning the specific nature of any such relationships Advisor may have.

B. Advisor hereby further discloses that Advisor operates an independent, affiliate entity, NHB Capital Partners, which provides private investment capital in concert with an institutional partner. While Advisor has extraordinary access to NHB Capital Partners, Client should not infer from this relationship that any investment in Client would be scrutinized in a manner materially different from that of any other investment in or with a non-client. NHB Capital Partners has its own fiduciary responsibilities to its investors and all transactions should be considered "arms length". Furthermore, should Client, its lenders or investors, perceive an inherent conflict of interest, because of the relationship with NHB Capital Partners, then Advisor shall, upon written request, prohibit NHB Capital Partners from participating in any Client transaction.

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement on the day and year first above written.

**Damon's International, Inc.**                **NHB ADVISORS, INC.**

By: _____                By: _____
                                                Edward T. Gavin, CTP
                                                Principal

if during the term of this Agreement or any further extensions or modifications of this Agreement, or for a period of one year thereafter, Client offers, or any of Advisor's personnel accepts, any employment position or contract with Client, Advisor shall be deemed to have earned a reasonable commission in connection therewith, which shall be calculated at a rate of 30% of the annualized compensation in the event of employment or of the annualized contract amount in the event of a contract, which shall be payable immediately upon presentation of Advisor's invoice therefore.

14. DISCLOSURE

   A. Advisor hereby discloses that Advisor has many relationships in the business community involving lenders, law firms, accounting firms, consulting firms, independent consultant contractors, and others. These relationships may include Advisor in the past or currently: receiving client referrals, providing client referrals, providing or receiving professional services, employing employees or contractors or serving as a contractor, and other types of relationships. These relationships may include lenders, professionals or others that have a connection with Client and/or Advisor's services provided under this Agreement. Such relationships are expected to continue and new ones may begin during the provision of services hereunder. Advisor represents that its independence in providing services hereunder is not compromised by such relationships, and is willing to confer with Client at Client's request concerning the specific nature of any such relationships Advisor may have.

   B. Advisor hereby further discloses that Advisor operates an independent, affiliate entity, NHB Capital Partners, which provides private investment capital in concert with an institutional partner. While Advisor has extraordinary access to NHB Capital Partners, Client should not infer from this relationship that any investment in Client would be scrutinized in a manner materially different from that of any other investment in or with a non-client. NHB Capital Partners has its own fiduciary responsibilities to its investors and all transactions should be considered "arms length". Furthermore, should Client, its lenders or investors, perceive an inherent conflict of interest, because of the relationship with NHB Capital Partners, then Advisor shall, upon written request, prohibit NHB Capital Partners from participating in any Client transaction.

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement on the day and year first above written

| **Damon's International, Inc.** | **NHB ADVISORS, INC.** |
|---|---|
| By: _____ | By: _____ |
| | Edward T. Gavin, CTP |
| | Principal |

6